COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone 602•252•8400

Daniel G. Dowd (012115)
Email: ddowd@CDQLaw.com
Betsy J. Lamm (025587)
Email: blamm@CDQLaw.com
Rebecca van Doren (019379)
Email: rvandoren@CDQLaw.com
Kaysey L. Fung (032585)
Email: kfung@CDQLaw.com
   Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Ricardo Guthrie,<br><br>          Plaintiff,<br><br>vs.<br><br>The Arizona Board of Regents,<br><br>          Defendant. | Case No: 2:21-cv-02158-SMM<br><br>**THE ARIZONA BOARD OF REGENTS' PARTIAL MOTION TO DISMISS**<br><br>(Assigned to the Honorable Stephen M. McNamee)<br><br>**(Oral Argument Requested)** |

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendant The Arizona Board of Regents ("ABOR") respectfully requests that the Court dismiss with prejudice multiple claims asserted against it by Plaintiff Ricardo Guthrie ("Plaintiff"). Plaintiff's Second Amended Complaint ("SAC") is fatally flawed in several material respects, including: (i) Plaintiff's allegations relating to, and claims based upon, events occurring prior to April 2019 are untimely and barred by Plaintiff's failure to comply with Title VII's charge-filing requirement under 42 U.S.C. § 2000e-5; (ii) Plaintiff's allegations relating to, and claims based upon, events occurring after February 2020 are likewise barred by Plaintiff's failure to comply with Title VII's charge-filing requirement, 42 U.S.C. § 2000e-5; (iii) Plaintiff does not

1   state a plausible claim for race discrimination under Title VII, 42 U.S.C. § 2000e-2(a), as he

2   does not identify similarly situated individuals allegedly treated more favorably than Plaintiff,

3   or other circumstances giving rise to an inference of discrimination based on race; and (iv)

4   Plaintiff cannot state a plausible claim for hostile work environment under 42 U.S.C. §§

5   2000e-2(a) or -3(a), as he does not allege conduct sufficiently severe or pervasive to alter the

6   conditions of Plaintiff's employment and create a hostile and abusive environment.

7   Plaintiff's conclusory allegations are not facts and cannot salvage his deficient claims.  The

8   absence of well-pled facts requires dismissal of Counts One, Two and Four of the SAC.[1]

9   **I.      Motion To Dismiss Standard.**

10          Rule 12(b)(6) serves the important role of eliminating legally deficient causes of

11  action early in the case, sparing litigants the cost and burdens of discovery.  *See, e.g.*, *City of*

12  *Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020), *cert. denied sub nom. Chevron Corp. v. City*

13  *of Oakland*, 141 S. Ct. 2776 (2021) (Rule 12(b)(6) "is designed 'to enable defendants to

14  challenge the legal sufficiency of complaints without subjecting themselves to discovery,' the

15  cost of which can be 'prohibitive.'" (*quoting Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d

16  729, 738 (9th Cir. 1987)); *accord Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d

17  1157, 1160 (Fed. Cir. 1993) ("The purpose of the rule is to allow the court to eliminate

18  actions that are fatally flawed in their legal premises and destined to fail, and thus to spare

19  litigants the burdens of unnecessary pretrial and trial activity." (*citing Neitzke v. Williams*, 490

20  U.S. 319, 326-27 (1989)).  A complaint must, therefore, "plausibly suggest an entitlement to

21  relief such that it is not unfair to require the opposing party to be subjected to the expense

22  of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

23          "A claim has facial plausibility when the pleaded factual content allows the court to

24  draw the reasonable inference that the defendant is liable for the misconduct alleged."

25  —————————————————

26  [1]     For purposes of this Motion, ABOR accepts the allegations in the SAC as true and
    does not at this time seek dismissal of Count Three in its entirety, concerning alleged
27  retaliation.  As reflected in the concurrently filed Answer, ABOR denies the allegations
    against it and expressly denies that it engaged in any conduct violating Title VII.  ABOR will
28  pursue summary judgment regarding Count Three at the appropriate time.

COHEN DOWD QUIGLEY

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*citing Twombly*, 550 U.S. 544, 556 (2007)). While the Rules do not require detailed factual allegations, they "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted). Instead, the complaint must contain factual allegations that elevate the claim beyond speculation to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547, 570; *accord Iqbal*, 556 U.S. at 678 (requiring more than a sheer possibility that defendant acted unlawfully). Plaintiff's SAC falls well short of this standard. Despite two amendments to Plaintiff's complaint, including one amendment that followed the parties' meet and confer pursuant to LRCiv. 12.1(c), Counts One, Two and Four of the SAC still fail to state plausible claims for relief against ABOR and should be dismissed.

## II.    Alleged Events Occurring Before April 9, 2019 Cannot Form The Basis For Plaintiff's Discrimination (Count One) or Retaliation (Count Three) Claims.

Prior to filing a Title VII claim in court, a plaintiff is required to first comply with the charge filing provisions of 42 U.S.C. § 2000e-5(e)(1). *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("Title 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff <u>must</u> <u>satisfy</u> before filing suit." (emphasis added) (*citing Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47 (1974))). Plaintiff was required to file a charge addressing the challenged conduct with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the conduct at issue. 42 U.S.C. § 2000e-5(e)(1); *see also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019); *Morgan*, 536 U.S. at 109 (explaining that use of the term "shall" "makes the act of filing a charge within the specified time period mandatory"). "A claim is time barred if it is not filed within these time limits." *Morgan*, 536 U.S. at 109.

. . .

3

When more than one alleged unlawful employment practice is at issue, only those discrete acts occurring within the 300-day statutory time period are actionable. *See id.* at 111-13 (*citing United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) *and Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)). As the Supreme Court in *Morgan* confirmed, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. And as "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," the charge "must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred." *Id.*

The SAC contains numerous allegations dating back to 2015 relating to Plaintiff's allegations of racial discrimination or retaliation against himself or others at Northern Arizona University (the "University"). [*See* SAC (Doc. 10) at ¶¶ 25-77.] Plaintiff incorporates these allegations into each individual count of the SAC. [*See id.* at ¶¶ 137 ("Dr. Guthrie realleges all prior allegations in this Complaint."), 164 (same).] Plaintiff then relies upon these stale allegations to support his claims of disparate treatment discrimination and retaliation. [*Id.* at ¶¶ 139-40 (alleging that "[a]t all material times," Plaintiff was the subject of discrimination based on race), 144 (broadly referencing "adverse employment actions described above"), 168-69 (similar).] However, Plaintiff did not file a charge with the EEOC until February 2, 2020. [*Id.* at ¶ 131.] Based on the date of Plaintiff's EEOC charge, only allegations of discrete discriminatory or retaliatory adverse employment actions occurring between April 9, 2019 and February 2, 2020 are potentially actionable. 42 U.S.C. § 2000e–5(e)(1); *Morgan*, 536 U.S. at 113. Alleged acts occurring before April 9, 2019 are <u>not</u> actionable. Accordingly, to the extent Plaintiff's claims for disparate treatment discrimination (Count One) and retaliation (Count Three) are based upon alleged acts occurring prior to April 9, 2019, they are barred by Plaintiff's failure to comply with Title VII's charge-filing requirement and must be dismissed.[2]

---

[2]    ABOR recognizes that hostile work environment claims require a different analysis. *See, e.g.*, *Morgan*, 536 U.S. at 122 (holding claims of discrete acts will be barred unless plaintiff filed a timely charge with the EEOC, while hostile work environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful

**III.    Alleged Events Occurring After February 2020 Cannot Form The Basis For Plaintiff's Discrimination (Count One) or Retaliation (Count Three) Claims.**

The SAC also alleges discriminatory or retaliatory acts against Plaintiff after he filed the February 2, 2020 EEOC charge.  [*See, e.g.,* SAC (Doc. 10) at ¶¶ 115 (alleging Plaintiff refused to meet with the Associate Dean who conducted "exit interviews" of former staff members), 129-30 (alleging Plaintiff met with the University's President and Provost to "seek resolution of his complaints," but that "nothing substantive was ever done to ameliorate or resolve the situation"), 134 (alleging the "EEOC Charge has not deterred Dean Pugliesi or the University from continuing their ongoing pattern and practice of racially motivated discrimination, harassment, and retaliation.").]    The SAC further references the appointment of another individual as the Director of Ethnic Studies at the University in June 2020 – several months after Plaintiff filed his EEOC charge.  [*See id.* at ¶¶ 19 (alleging Plaintiff "held the position as Chair/Director of Ethnic Studies until June 2020."), 142-43 (alleging Plaintiff was qualified for the position and that "[s]imilarly situated individuals outside of [his] protected class were treated more favorably in both instances").] As with Plaintiff's allegations relating to acts occurring prior to April 9, 2019, Plaintiff's allegations relating to conduct occurring <u>after</u> February 2, 2020 cannot state a claim for relief under Title VII, either for disparate treatment (Count One) or retaliation (Count Three).

Even if the Court considered Plaintiff's post-February 2, 2020 allegations, vague allegations of discriminatory or retaliatory acts allegedly occurring after his filing of the EEOC charge are not sufficient to state a plausible discrimination claim.  For example, the SAC alleges "nothing substantive was ever done to ameliorate or resolve the situation" and "The EEOC Charge has not deterred Dean Pugliesi or the University from continuing their ongoing pattern and practice of racially motivated discrimination, harassment, and

. . .

. . .

employment practice and at least one act falls within the time period").  ABOR seeks dismissal of Plaintiff's hostile work environment claims on separate grounds below.

COHEN DOWD QUIGLEY

1  retaliation." [SAC (Doc. 10) at ¶¶ 130, 134.] These conclusory allegations do not state a

2  plausible claim under Title VII.[3]

3       The SAC also does not allege – because Plaintiff cannot in good faith allege – that

4  Plaintiff satisfied the mandatory charge-filing requirement with respect to the post-February

5  2, 2020 allegations in the SAC. As the *Morgan* Court explained, "Each discrete

6  discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113.

7  Plaintiff's failure to exhaust his administrative remedies and comply with Title VII's EEOC

8  charge-filing requirement bars his discrimination and retaliation claims based on the alleged

9  continued discrimination and retaliation after February 2, 2020.[4] Counts One and Three of

10  the SAC must, therefore, be dismissed to the extent they are based on alleged acts occurring

11  after February 2, 2020.

12  **IV.    Plaintiff Cannot State A Plausible Claim For Race Discrimination Under Title**
13  **VII (Count One).**

14       Title VII prohibits adverse employment actions against an individual "because of his

15  race, color, religion, sex, or national origin." *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir.

16  2003) (*citing* 42 U.S.C. § 2000e-2). To state a plausible claim for discrimination under Title

17  VII, plaintiffs must allege facts that, if accepted as true, allow the court to draw the

18  reasonable inference "(1) that they are members of a protected class; (2) that they were

19  qualified for their positions and performing their jobs satisfactorily; (3) that they experienced

20

21  [3]    Plaintiff similarly has not pled facts from which the Court could infer that the
22  allegations post February 2, 2020 are "like or reasonably related to the allegations contained
   in the EEOC charge." *See Green v. Los Angeles Cnty. Superintendent of Schools*, 883 F.2d 1472,
   1475-76 (9th Cir. 1989) (citations omitted). "Threadbare recitals" and "conclusory
23  statements" are insufficient. *Iqbal*, 556 U.S. 678.

24  [4]    Plaintiff's First Amended Complaint alleged that Plaintiff filed a second EEOC
   charge on September 2, 2021. [Doc. 5 at ¶ 69.] Applying Title VII's statutory charge-filing
25  requirements, 42 U.S.C. § 2000e-5, Plaintiff's Second EEOC Charge may encompass only
   alleged conduct occurring within 300 days of the charge or, between November 6, 2020 and
26  September 2, 2021. Plaintiff's allegations relating to conduct between February 2020 and
   November 2020 do not fall within 300 days of an EEOC charge and are barred under any
27  circumstances, and certainly as pled.
        As Plaintiff removed allegations relating to the second EEOC charge from the SAC,
28  this Motion does not address any claims or allegations relating to the second EEOC charge.

COHEN DOWD QUIGLEY

adverse employment actions; and (4) that 'similarly situated individuals outside [their] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (*quoting Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)); *see also Iqbal*, 556 U.S. 663 (stating facial plausibility standard (*citing Twombly*, 550 U.S. at 556)). The absence of facts alleging any one of these elements bars a claim for discrimination under Title VII. Here, fatal to Count One, the SAC fails to allege facts sufficient to draw a reasonable inference that alleged adverse employment action(s) occurred because of Plaintiff's race.[5]

As the Ninth Circuit explained in *Wood v. City of San Diego*, dismissal of a discrimination claim under Title VII is appropriate if a plaintiff fails to sufficiently plead facts supporting the fourth element of a discrimination claim: discriminatory intent. 678 F.3d 1075, 1081 (9th Cir. 2012). The court explained:

> Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2672, 174 L.Ed.2d 490 (2009) (internal quotation marks and alterations omitted). "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Id.* (internal quotation marks omitted). A discriminatory motive may be established by the employer's informal decisionmaking or "a formal, facially discriminatory policy," but "liability depends on whether the protected trait … actually motivated the employer's decision." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). "It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington,* 770 F.2d 1401, 1405 (9th Cir.1985).

*Id.* (affirming dismissal of Title VII claim based on plaintiff's failure to sufficiently plead discriminatory motive). Other decisions in this Circuit are in accord. *See, e.g., Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361, 363-64 (9th Cir. 2019) (*citing Davis v. Team Elec. Co.*,

---

[5] For purposes of this Motion (and <u>only</u> this Motion), ABOR accepts as true Plaintiff's allegation that his 2019 performance review was "negative" and satisfies the "adverse employment action" element. [*See* SAC (Doc. 10) at ¶¶ 81-82.] As reflected in ABOR's Answer, ABOR denies this allegation and characterization.

COHEN DOWD QUIGLEY

1  520 F.3d 1080, 1089 (9th Cir. 2008)) (affirming dismissal of disparate treatment claim as

2  factual allegations neither satisfied disparate treatment standard or supported an inference

3  that racial animus was the reason for the adverse employment action).

4         As in *Bastidas*, the SAC does not allege facts from which the Court could reasonably

5  infer the existence of racial animus.  It does not allege facts showing "similarly situated

6  individuals outside [Plaintiff's] protected class were treated more favorably" than Plaintiff.

7  *See Hawn*, 615 F.3d at 1156.    Rather, Plaintiff simply states the element as unsupported

8  conclusions:  (1) "Similarly situated individuals outside of Dr. Guthrie's protected class were

9  treated more favorably in all instances"; and, (2) "Similarly situated individuals outside of Dr.

10 Guthrie's protected class were treated more favorably in both instances."  [SAC (Doc. 10) at

11 ¶¶ 141, 143.]  The SAC does not identify any similarly situated individual or group outside of

12 Plaintiff's protected class who was treated more favorably than Plaintiff.  It certainly does

13 not allege factual content from which the Court could reasonably infer that any alleged

14 individuals receiving more favorable treatment were "similarly situated" to Plaintiff in all

15 material respects.  *See, e.g.*, *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1004 (9th Cir.

16 2019) (*quoting Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).  The SAC also does not allege

17 that Plaintiff's unidentified comparators engaged in conduct similar to his.  *See Bastidas*, 774

18 F. App'x at 363-64 (noting similarly situated comparators must have engaged in conduct of

19 comparable seriousness and finding disparate treatment claim failed on that element where

20 plaintiff did not show that white doctors engaged in conduct similar to his).

21        Moreover, Plaintiff's allegations of discriminatory motive or intent are entirely

22 conclusory.  For example, he cites concerns that his supervisor raised about his conduct and

23 then alleges: "Such accusations and words are stereotypes that Dean Pugliesi used to paint

24 and portray Dr. Guthrie as an 'uppity' Black man who others supposedly viewed as

25 intimidating." [SAC (Doc. 10), ¶ 50.]  This inference cannot reasonably be drawn from the

26 facts alleged.   Other allegations attempting to connect specific interactions with race

27 discrimination are also either conclusory or speculative, and constitute unreasonable

28 inferences.  [*See, e.g.,* SAC (Doc. 10), ¶¶ 51 ("Her comments reflected a discriminatory bias

COHEN DOWD QUIGLEY

8

against Dr. Guthrie."), 91 ("Dean Pugliesi was motivated to, and did, give him a less supportive performance review because of his race…"), 108 ("These events further demonstrate Dean Pugliesi's discriminatory animus toward Dr. Guthrie as a Black man.").]

The Court does "not accept legal conclusions in the complaint as true, even if 'cast in the form of factual allegations.'" *Lacano Investments, LLC v. Balash,* 765 F.3d 1068, 1071 (9th Cir. 2014) (*quoting Doe v. Holy See,* 557 F.3d 1066, 1073 (9th Cir. 2009)); *see also In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). The Ninth Circuit applies this same standard to Title VII cases, holding that conclusory allegations of discriminatory intent or that similarly situated individuals outside of a protected class were treated more favorably, are insufficient to plausibly plead unlawful discrimination. *See Sheets v. City of Winslow*, 859 F. App'x. 161, 162 (9th Cir. 2021) (district court did not err in finding plaintiff's allegations did not "plausibly suggest an entitlement to relief" when he failed to demonstrate he was similarly situated to a proposed comparator "in all material respects"); *Jackson v. Equifax Workforce Sols.*, 740 F. App'x 116, 117 (9th Cir. 2018) ("The district court properly dismissed Jackson's discrimination claim under 42 U.S.C. § 1981 because Jackson failed to allege facts sufficient to show that his termination was based on racial animus."). *Accord Zakara v. Flack Global Metals*, 2021 WL 5578876, at *3-4 (D. Ariz. Nov. 29, 2021) (dismissing disparate treatment claim under Title VII, explaining the court "cannot find that similarly situated individuals outside Plaintiff's protected class were treated more favorably, and Plaintiff therefore fails to state a claim for disparate treatment upon which relief can be granted"); *DeFrancesco v. Ariz. Bd. of Regents,* 2021 WL 4170673, at *4 (D. Ariz. Sept. 14, 2021) (plaintiff failed to allege sufficient factual information demonstrating he and his comparators were similarly situated and that he was entitled to proceed on disparate treatment claim where plaintiff merely alleged that other males outside his protected class at his level of seniority were permitted to keep their jobs).

Certain of Plaintiff's allegations must be further disregarded because the events as Plaintiff describes them equally impacted those outside Plaintiff's protected class. *See*

*Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (noting that a "plaintiff may plead herself out of court.") (*quoting Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).  For example, in Paragraph 94, Plaintiff alleges that the Dean "place[d] a limit on what she called 'inequitable' travel/research funding in the Ethnic Studies Program and other units that had high revenues accrued."  [SAC (Doc. 10), ¶ 94.]  By including "other units" in his description of the actions taken, Plaintiff demonstrated that the action was not discriminatory.  Similarly, Plaintiff alleges that both he and the Chair of the Women & Gender Studies ("WGS") program were "ordered to attend mandatory supervisory meetings with the Associate Dean." [SAC (Doc. 10), ¶ 107.]  Absent an allegation that the WGS chair was also Black, this assertion cannot support, and in fact undermines, a racial discrimination claim.  *See, e.g., Terry v. Perdue*, 2018 WL 4494883, at *9 (D. Md. Sept. 19, 2018) (holding that complaint's allegation that other disabled coworkers were allowed to work from home "actually undercuts Plaintiff's assertion that he was treated differently from similarly situated individuals outside of his protected class—i.e., not disabled."); *Assue v. UPS, Inc.*, 2018 WL 3849843, at *14 (S.D.N.Y. Aug. 13, 2018) (holding that inference of discrimination "is undermined by the fact that individuals outside of Plaintiff's protected class … were treated similarly").

Plaintiff's discrimination claim is, at best, "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Rather than alleging facts stating a plausible claim, Count One of the SAC is based on the false syllogism that: (1) Plaintiff is African American; (2) Plaintiff allegedly received a negative performance review and was verbally reprimanded; therefore (3) the alleged negative performance review and reprimand must have been motivated by Plaintiff's race.  [*See* SAC (Doc. 10), ¶¶ 10, 81-83, 91.]  Whether deemed conclusory allegations or unwarranted inferences (or both), these allegations do not state a claim for relief.  *See Bastidas*, 774 F. App'x at 363 (rejecting bare allegations that white physicians were treated differently than plaintiff based on plaintiff's failure to sufficiently point to underlying facts); *see also DeFrancesco*, 2021 WL 4170673 at *5 (rejecting unwarranted deductions of fact that (a) because plaintiff was fired and is homosexual and no one else was

10

terminated at the time, basis for plaintiff's termination must be his sexual orientation and (b) because heterosexual candidate was hired, plaintiff who was fired while acting in a separate role must have been fired because he is homosexual); *Sherrill v. Blank*, 2013 WL 11312398, at *2 (D. Ariz. Nov. 26, 2013) (dismissing Title VII claim where "Plaintiff does not provide sufficient facts to show that her termination was based on her gender, as opposed to some legitimate business interest."). As in *Bastidas*, *DeFrancesco*, and *Sherrill*, the SAC is devoid of any details or supporting facts indicating that Plaintiff's race was a motivating factor underlying any alleged adverse actions taken against him. Plaintiff's allegations do not state a plausible claim for race discrimination under Title VII and Count One should be dismissed.

## V.    Plaintiff Cannot State A Plausible Hostile Work Environment Claim (Counts Two, Four).

Plaintiff alleges a hostile work environment claim based on race in violation of 42 U.S.C. § 2000e-2(a) (Count Two), and as retaliation, in violation of 42 U.S.C. § 2000e-3(a) (Count Four). For either claim, a plaintiff must allege facts demonstrating: (1) that he was subjected to verbal or physical conduct because of his race or because he engaged in protected conduct under Title VII; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) ("At the motion to dismiss stage, Johnson need not support his allegations with evidence, but his complaint must allege sufficient facts to state the elements of a hostile work environment claim." (citation omitted)); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (describing the elements of a hostile work environment claim); *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005) (holding that retaliation claim based on hostile work environment is actionable only if the harassment alleged is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (citation and quotation omitted)).

In determining whether the alleged conduct is sufficiently severe and pervasive, courts consider the "frequency of the discriminatory conduct; its severity; whether it is

COHEN DOWD QUIGLEY

1  physically threatening or humiliating, or a mere offensive utterance; and whether it
2  unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*,
3  524 U.S. 775, 787-88 (1998). The Ninth Circuit has made it clear that "[c]onduct must be
4  extreme to amount to a change in the terms and conditions of employment." *Montero v.*
5  *AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999). The environment must further be both
6  subjectively and *objectively* hostile, such that a reasonable person in the plaintiff's position
7  would perceive it to be hostile or abusive. *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687
8  (9th Cir. 2017). As the Supreme Court has explained:

9  These standards for judging hostility are sufficiently demanding to ensure that
10  Title VII does not become a "general civility code." Properly applied, they
   will filter out complaints attacking "the ordinary tribulations of the workplace,
11  such as the sporadic use of abusive language, gender-related jokes, and
12  occasional teasing."

13  *Faragher*, 524 U.S. at 788 (citations omitted); *see also, e.g.*, *Vasquez*, 349 F.3d at 642-44 (holding
14  that "isolated offensive remarks, combined with … other complaints about unfair
15  treatment" were "not severe or pervasive enough to create a hostile work environment");
16  *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 798-99 (9th Cir. 2003) (holding that "racially
17  insensitive 'humor,'" including use of the phrase "China man" was not severe or pervasive
18  enough to support a hostile work environment claim). Although a workplace need not be
19  "so heavily polluted with discrimination as to destroy completely the emotional and
20  psychological stability of minority group workers" to be actionable, "[c]onduct that is not
21  severe or pervasive enough to create an objectively hostile or abusive work environment—
22  an environment that a reasonable person would find hostile or abusive—is beyond Title
23  VII's purview." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993) (citation and internal
24  quotation marks omitted).

25      Applying these settled principles to the allegations within the SAC, Plaintiff has not
26  stated a plausible hostile work environment under either racial discrimination (Count Two)
27  or retaliation (Count Four) theories. Plaintiff makes conclusory allegations that a hostile
28  work environment existed, but provides no factual detail supporting this conclusion. At

COHEN DOWD QUIGLEY

COHEN DOWD QUIGLEY

best, his allegations reveal what Plaintiff perceived to be a strained working relationship with the Dean of the College of Social and Behavioral Sciences (the "Dean"), as the Dean, in her role as Plaintiff's supervisor, attempted to counsel Plaintiff as to the manner in which he supervised others and his method of communicating with others about issues on campus. Only two allegations in the entirety of the 24-page SAC identify confrontations between Plaintiff and the Dean that were allegedly less than cordial. [SAC (Doc. 10), ¶¶ 72 ("Dean Pugliesi charged into Dr. Guthrie's office … and confronted him: 'Do you want to keep the faculty line, or not?' or words to that effect."), 120 ("Dean Pugliesi verbally harassed Dr. Guthrie for opposing her plans to appoint a new Director to replace him and used disparaging language that he was 'pushy,' and that she was tired of arguing with him.").] Neither of the allegations is linked to Plaintiff's race or to a retaliatory motive except through Plaintiff's sheer speculation. Neither interaction is alleged to have occurred in the presence of others, nor occurred in a manner that would have resulted in embarrassment or humiliation. And neither interaction is alleged to involve physical threats. Thus, even if accepted as true, these allegations do not demonstrate conduct so severe and pervasive that a reasonable person would perceive it to be so hostile and abusive so as to permanently alter the terms or conditions of his or her employment.

Indeed, courts have held that conduct far more severe than that alleged by Plaintiff was insufficient to state a hostile work environment claim. For example, in *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000), the plaintiff alleged that her supervisor created a hostile working environment by referring to women using terms such as "castrating bitch," "madonna," or "regina," and telling plaintiff that "she wasn't Artemis as he had previously thought but Medea." The court held that although the comments were offensive, they were insufficient to support a hostile work environment claim. *Id.* at 1111. The *Kortan* court contrasted the circumstances alleged by plaintiff with those in *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999) *overruled on other grounds by Morgan*, 536 U.S. 101 (2002), in which the Ninth Circuit reversed the grant of summary judgment against the plaintiff on a hostile work environment claim. As described in *Kortan*:

Anderson was an FBI agent who "endured a host of sexually harassing incidents between 1986 and 1994," including being referred to by her supervisor as the "office sex goddess," "sexy," "gorgeous," and "the good little girl" instead of by name; at a presentation she was to make about an arrest plan, finding an easel with a drawing of a pair of breasts and the words, "Operation Cupcake," and being told by the supervisor in front of the assembled group "This is your training bra session"; receiving various vulgar notes including a cartoon depicting varieties of female breasts with her initials next to an example labeled "cranberries"; and being patted on the buttocks by another agent, who commented on her "putting on weight down there" and informed Anderson of his observations from time to time.

217 F.3d at 1111. The *Kortan* court held that "The conduct in this case is simply not of this order of magnitude." *Id.* The same holds true here.

Plaintiff's allegations in the SAC do not even rise to the level of the conduct alleged in *Kortan*, and are far removed from the "order of magnitude" required to state a plausible claim for hostile work environment under 42 U.S.C. §§ 2000e-2(a) or -3(a). Pleading a cognizable claim requires much more. As the Supreme Court stated in *Iqbal*, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, Plaintiff's hostile work environment claims in Counts Two and Four should be dismissed. *See, e.g., Morrow v. City of Oakland*, 690 F. App'x 517, 519 (9th Cir. 2017) ("The district court properly dismissed Morrow's claim that he was subjected to harassment and a hostile work environment in violation of Title VII … because Morrow did not allege that the conduct was sufficiently severe or pervasive."); *Dixon v. Dep't of Educ.*, 783 F. App'x 787, 788 (9th Cir. 2019) (affirming dismissal of hostile work environment claim because "alleged conduct did not rise to a level that was sufficiently severe and pervasive" where plaintiff alleged "two racially-motivated comments over the course of several years" and "that she was degraded when Defendant forced her and the only other African-American employee to share an office"). [6]

[6]    Counts Two and Four, and Count One of the SAC, should be dismissed with prejudice. Any request for leave to amend is not warranted here, as Plaintiff has already amended his complaint twice and has exhausted his attempts to identify additional factual

COHEN DOWD QUIGLEY

14

**VI.    Conclusion.**

Despite ample opportunity, including two prior amendments to his pleading, Plaintiff's SAC still fails to state plausible claims for relief against ABOR under Title VII. Plaintiff recites a host of allegations for which he failed to comply with the mandatory charge-filing requirements under 42 U.S.C. § 2000e-5(e).  These allegations are barred as a matter of law and cannot support Plaintiff's claims for racial discrimination or retaliation under Counts One or Three of the SAC.  Count One further fails to state a plausible claim for racial discrimination as Plaintiff does not – as he cannot – allege facts sufficient to allow the Court to draw the reasonable inference that Plaintiff suffered adverse employment actions <u>because of</u> his race.  Finally, Plaintiff's hostile work environment claims (Counts Two and Four) are barred by Plaintiff's inability to plead facts demonstrating harassment so severe and pervasive that a reasonable person in Plaintiff's position would find the conduct so abusive as to permanently alter the conditions of employment.

Accordingly, and for each of the reasons set forth above, ABOR respectfully requests that the Court dismiss Counts One, Two and Four in their entirety, as well as Count Three to the extent it is based on allegations prior to April 9, 2019 or after February 2020.  ABOR further respectfully requests an award of its reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

RESPECTFULLY SUBMITTED this 10th day of March, 2022.

**COHEN DOWD QUIGLEY**
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
    Attorneys for Defendants

By:    */s/ Betsy J. Lamm*
    Daniel G. Dowd
    Betsy J. Lamm
    Rebecca van Doren
    Kaysey L. Fung

COHEN DOWD QUIGLEY

allegations to state a plausible claim for relief under Title VII.  *See DeFrancesco*, 2021 WL 4170673 at *2 ("failure to supply new facts within an amended complaint supports a denial of further leave to amend" (*quoting Bhagat v. City of Santa Ana*, 58 F. App'x 332, 334 (9th Cir. 2003)).

15